**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RANDY SCOTT DECKER,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:26-cv-00070-ADA-SH** |
| **CHIPTON-ROSS, INC. and FIRST** | § | |
| **ADVANTAGE CORPORATION,** | § | |
| | § | |
| *Defendants*. | § | |

---

**DEFENDANT CHIPTON-ROSS, INC.'S MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

---

**TABLE OF CONTENTS**

I.      SUMMARY OF THE ARGUMENTS ................................................................ 1

II.     PROCEDURAL BACKGROUND.................................................................... 2

III.    OPERATIVE ALLEGATIONS........................................................................ 3

IV.     REQUEST FOR JUDICIAL NOTICE ............................................................ 6

        A.    The Court should take judicial notice of Plaintiff's presence on Arizona
              Department of Public Safety sex offender registry. .................................... 7

        B.    The Court should take judicial notice of materials from the Arizona criminal
              court record for the criminal indictment against Plaintiff.......................... 8

V.      LEGAL STANDARD...................................................................................... 10

VI.     ARGUMENT................................................................................................... 10

        A.    The first two FCRA claims are for violations of statutes governing *providers*
              of background checks, but Chipton-Ross was the recipient, not the provider,
              of the FirstAdvantage Report. ................................................................... 11

        B.    All FCRA claims are deficient as a matter of law because Plaintiff cannot
              show any causation or damages where the matter in question is true...................... 12

        C.    Count III fails for insufficient notice pleading......................................... 15

        D.    The defamation claim fails for multiple independently sufficient reasons. ............. 16

              1.    The allegations and matters properly before the Court demonstrate
                    that the challenged claims are true, providing an absolute defense to
                    Plaintiff's defamation claim as a matter of law. ............................. 16

              2.    Plaintiff fails to allege a publication by Chipton-Ross. ................................. 17

              3.    The challenged statements are subject to the common interest
                    privilege as a matter of law............................................................. 18

              4.    The claim is fundamentally mis-pleaded and cannot be cured. ...................... 20

        E.    The tortious interference claim was already dismissed, and the
              amendment does not cure the claim.......................................................... 20

VII.    CONCLUSION................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Dep't. of Hous. & Urban Dev.*,
554 F.3d 525 (5th Cir. 2008) ........................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................10, 18

*Bedford v. Spassoff*,
520 S.W.3d 901 (Tex. 2017)........................................................................................16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................10, 18

*Burbage v. Burbage*,
447 S.W.3d 249 (Tex. 2014).................................................................................18, 19

*In re Fisher*,
649 F.3d 401 (5th Cir. 2011) ...............................................................................13, 14

*Fitzjarrald v. Panhandle Pub. Co.*,
228 S.W.2d 499 (Tex. 1950).......................................................................................19

*Funk v. Stryker Corp.*,
631 F.3d 777 (5th Cir. 2011) .........................................................................................7

*Gen. Elec. Cap. Corp. v. Posey*,
415 F.3d 391 (5th Cir. 2005) ...................................................................................4, 6

*Gillum v. Republic Health Corp.*,
778 S.W.2d 558 (Tex. App.—Dallas 1989, no writ) ..........................................18, 19

*Hammer v. Equifax Info. Servs.*,
LLC, No. 3:18-CV-1502-C, 2019 WL 7602463 (N.D. Tex. Jan. 16, 2019)............13

*Johnson v. Tyson Foods, Inc.*,
580 F. Supp. 3d 382 (N.D. Tex. 2022) .......................................................................14

*Long v. Southeastern Pa. Transp. Auth.*,
903 F.3d 312 (3d Cir. 2018)........................................................................................13

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
512 F.3d 137 (5th Cir. 2007) ......................................................................................16

*Norman v. Experian Info. Sols., Inc.*,
2013 WL 1774625 (N.D. Tex. Apr. 25, 2013) (Boyle, J.).........................................12

*Norris v. Hearst Trust*,
　　500 F.3d 454 (5th Cir. 2007) ..............................................................................7, 8

*Randall's Food Mkts., Inc. v. Johnson*,
　　891 S.W.2d 640 (Tex. 1995)...................................................................................16

*Shell Oil Co. v. Writt*,
　　464 S.W.3d 650 (Tex. 2015)...................................................................................18

*Shemwell v. Cannon*,
　　352 F. Supp. 3d 690 (N.D. Tex. 2019) ...................................................................15

*Steinhaus v. Beachside Env't, LLC*,
　　590 S.W.3d 672 (Tex. App. —Houston [14th Dist.] 2019, pet. denied) .................19

*Waggoner v. Trans Union, LLC*,
　　2003 WL 22220668 (N.D. Tex. July 17, 2003) ..................................................12, 13

*Warren v. Federal Nat'l Mortg. Ass'n*,
　　932 F.3d 378 (5th Cir. 2019) ..................................................................................16

*Weatherford v. U.S.*,
　　957 F. Supp. 830 (M.D. La. 1997)............................................................................6

*Williams v. First Advantage LNS Screening Solutions Inc.*,
　　947 F.3d 735 (11th Cir. 2020) ................................................................................11

**Statutes**

A.R.S. § 13-3212 .....................................................................................................8, 9

15 U.S.C. § 1681.............................................................................................11, 12, 13

Fair Credit Reporting Act ................................................................................ *passim*

**Other Authorities**

Fed. R. Evid. 201(b)......................................................................................................6

Rule 12(b)(6).................................................................................................... *passim*

Rule 15(a)(3)................................................................................................................3

Rule 56 .........................................................................................................................6

All emphasis is added unless otherwise noted.

COMES NOW, Defendant Chipton-Ross, Inc. ("Chipton-Ross"), and files its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) ("Motion"). In support, Chipton-Ross respectfully shows this Court as follows:

## I.    SUMMARY OF THE ARGUMENTS

Pro se Plaintiff Randy Scott Decker's First Amended Complaint sets forth five counts: three for violations of the Fair Credit Reporting Act ("FCRA"), one for defamation, and one for tortious interference. The several independently sufficient bases on which the Court can, and should, dismiss each of Plaintiff's claims against Chipton-Ross with prejudice and without leave to amend are as follows:

- Counts I & II. The first two FCRA claims are based on statutes that specifically govern preparers of reports, but as Plaintiff affirmatively alleges and admits, Chipton-Ross was not the preparer of the challenged background check, meaning that, as a matter of law, these claims do not apply to Chipton-Ross.

- Counts I – III. All three FCRA claims are deficient as a matter of law because it is factually true that Plaintiff currently appears in the Arizona Department of Public Safety's sex offender registry, and it is also factually true that Plaintiff previously pleaded guilty to the crime of child prostitution. Plaintiff cannot plausibly plead causation or damages when the information on which Chipton-Ross acted is factually true.

- Count III. The allegations in the third FCRA claim are generalized and presented in the alternative and fail to provide Chipton-Ross fair notice of the acts or omissions Plaintiff alleges establish liability.

- Count IV. The defamation claim fails as a matter of law for any of the following reasons:

1

- o The challenged statement is factually true and not misleading, providing a complete defense to defamation.

- o Plaintiff cannot allege a publication by Chipton-Ross.

- o The challenged statement is subject to the common interest privilege.

- o The claim is fundamentally mis-pleaded and cannot be cured.

- Count V. The tortious interference claim fails as a matter of law because it contains the exact same deficiencies that led to its prior dismissal.

For these reasons, and as set forth more fully below, the Court should dismiss Plaintiff's First Amended Complaint as against Defendant Chipton-Ross with prejudice and without leave to amend.

## II.  PROCEDURAL BACKGROUND

Plaintiff filed this action on January 13, 2026.  (Compl., Dkt. 1.)  On April 15, 2026, this Court adopted the Magistrate Judge's Report and Recommendation following independent review of Plaintiff's Complaint, dismissing with prejudice all claims except the FCRA claims and the defamation per se claims.  (Dkt. 33.)  On April 16, 2026, Plaintiff filed a single motion asking the Court both to reconsider that order dismissing certain of his claims and for leave to file an amended complaint.  (Dkt. 34.)

As of May 4, 2026, Chipton-Ross's deadline to respond to the Complaint was June 3, 2026, as stated in the Court's text-only order dated April 30, 2026.  On May 4, 2026, before the Court ruled on Plaintiff's motion and before Chipton-Ross's deadline to respond to the Complaint had passed, Plaintiff filed a First Amended Complaint. (FAC, Dkt. 41.)  At the time, there was no order of the Court granting Plaintiff leave to amend his Complaint.

2

Three days later, on May 7, 2026, the Court granted Plaintiff's motion for leave to amend via text-only order. The text-only order did not set a deadline for Plaintiff to file an amended complaint, suggesting that the leave to amend was for the already-filed First Amended Complaint, which explains why there was no need for the Court to set a deadline.

Based on this series of events, Chipton-Ross presently understands the First Amended Complaint to be the operative pleading. Chipton-Ross's deadline to respond to the First Amended Complaint remains June 3, 2026, as provided by the Court's April 30, 2026 text-only order in conjunction with Rule 15(a)(3). Chipton-Ross now moves to dismiss the First Amended Complaint pursuant to Rule 12(b)(6).[1]

### III.    OPERATIVE ALLEGATIONS

The allegations in the operative First Amended Complaint are as follows and are provided solely for the purpose of Rule 12(b)(6) analysis. By citing or referencing Plaintiff's allegations, Chipton-Ross reserves all rights, preserves all arguments, and does not admit or acknowledge the truth of any of Plaintiff's allegations.

Plaintiff Randy Scott Decker is a resident of Leander, Texas. (FAC ¶ 9.) Defendant First Advantage Corporation is a consumer reporting agency that "regularly assembles, evaluates, and furnishes consumer reports for employment purposes." (FAC ¶ 10.) Moving party Chipton-Ross is a staffing company that, "upon information and belief, procured and/or used Plaintiff's consumer report in connection with Plaintiff's Boeing opportunity." (FAC ¶ 11.)

Plaintiff alleges he received a conditional offer of employment with Boeing with a scheduled start date of January 12, 2026, contingent upon successful completion of background

---

[1] These are the procedural facts most relevant to this Motion. As this Court is well aware, Plaintiff has filed, and continues to file, a staggering multiplicity of additional filings.

screening and employment verification.  (FAC ¶ 13.)  Plaintiff alleges generally that "Defendants participated in the screening/verification process and furnished information to Boeing and/or intermediaries for use in employment and adjudicative decisions."  (FAC ¶ 14.)

The only report identified in the First Amended Complaint is the report prepared and issued by First Advantage (Order #1871878404) (the "FirstAdvantage Report"), "which reflected multiple 'CONSIDER' results and initiated 'Managed Adverse Action' with an expected completion date of January 15, 2026." (FAC ¶ 15.) Plaintiff attaches an excerpt from the FirstAdvantage Report to his First Amended Complaint as Exhibit C.[2]   (Dkt. 41-4 ("FirstAdvantage Excerpt").)

The FirstAdvantage Report's "DOJ Sex Offender Search" item stated that Plaintiff is currently a registered sex offender in Arizona. (FAC ¶ 16; FirstAdvantage Excerpt, p. 2.)  Plaintiff characterizes this statement as "patently incorrect or materially misleading," (FAC ¶ 16), but does not allege anywhere in the FAC that he does not currently appear on the Arizona sex offender registry, (see generally FAC).

Plaintiff disputed the allegedly adverse items and provided supporting documentation, including a May 15, 2012 Arizona Superior Court minute entry from the Arizona Superior Court in Pima County, Case No. CR20113016-001, reflecting the dismissal with prejudice of a "failure-to-register" indictment (i.e., a criminal indictment for alleged failure to register as a sex offender). (FAC ¶¶ 3, 18-19.) Plaintiff attaches the May 15, 2012 minute entry to his FAC as Exhibit A. (Dkt. 41-2.)

---

[2] In analyzing a Rule 12(b)(6) motion, it is proper for the Court to consider materials Plaintiff has attached to his Complaint; doing so does not convert the motion into a motion for summary judgment. *Gen. Elec. Cap. Corp. v. Posey*, 415 F.3d 391, 398 n.8 (5th Cir. 2005) ("Documents attached to a complaint are considered part of the plaintiff's pleadings.").

With respect to Chipton-Ross specifically, Plaintiff makes a total of two factual allegations. The first is the allegation of Chipton-Ross's general role, as a staffing agency and a user of the FirstAdvantage Report, mentioned above. (*See also* FAC ¶ 33 ("Chipton-Ross procured and/or used Plaintiff's consumer report for employment purposes in connection with Plaintiffs' Boeing opportunity.").) The second is the allegation that Plaintiff "transmitted courtesy copies of emergency filings and supporting materials to Chipton-Ross's legal department and identified contacts" and that "Chipton-Ross recipients opened the transmissions and generated read receipts confirming actual notice." (FAC ¶ 20.)

As to damages, Plaintiff alleges that but for the conduct of "Defendants" (undifferentiated), he would have begun work on January 12, 2026, and earned approximately $99,798.40 annually; that the resulting income loss has placed him at risk of housing loss; and that his income loss has destabilized a non-party entity's franchise tax compliance obligations. (FAC ¶¶ 21–23.)

Plaintiff further alleges that the FirstAdvantage Report reflected that the documentation Plaintiff submitted to verify past employment with the UniTesT company (1991-1995) was "unacceptable." (FAC ¶ 17.) However, the excerpt of the FirstAdvantage Excerpt that Plaintiff attaches to his FAC contradicts this allegation and does not indicate that any documentation was "unacceptable." To the contrary: the second page is an entry specifically discussing employment verification for the employer "UniTest" and showing that the Comments field was updated on January 22, 2026. (FirstAdvantage Excerpt 2.) The Comments field states that Mr. Decker "has provided document[s] for years claimed" and that "proof of employment . . . documentation was provided by the candidate." (*Id.*) The FirstAdvantage Excerpt confirms that Plaintiff was given the opportunity to submit materials to contest the FirstAdvantage Report and that he did in fact submit such materials (as he openly admits in paragraph 18 of the First Amended Complaint),

5

which resulted in a January 22, 2026 update to the FirstAdvantage Report to reflect satisfactory employment documentation.  (FirstAdvantage Excerpt 2.)   The Court should disregard the allegations in the First Amended Complaint that the documentation was "unacceptable" to the extent contradicted by the FirstAdvantage Excerpt, which Plaintiff made an exhibit to the First Amended Complaint. *Weatherford v. U.S.*, 957 F. Supp. 830, 832 (M.D. La. 1997) ("[W]hen conclusions of fact made in the complaint are contradicted by an attached exhibit, the appended document controls and dismissal is appropriate."); *cf. Posey,* 415 F.3d at 398 n.8 ("[A] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment.")

## IV.    REQUEST FOR JUDICIAL NOTICE

In addition to the allegations in Plaintiff's First Amended Complaint, the Court may properly, and should, take judicial notice of the following matters: (1) Plaintiff's presence on the Arizona sex offender registry, and (2) a filing from the Pima County criminal court file for the criminal indictment Plaintiff alleges was dismissed with prejudice—the same criminal court file that is the source of Plaintiff's Exhibit A.

Chipton-Ross asks the Court to consider these matters by way of judicial notice only.  If the Court finds that consideration of either or both of these matters would require the Court to treat Chipton-Ross's Motion as a Motion for Summary Judgment under Rule 56, Chipton-Ross withdraws its request for judicial notice of the matter(s).

The Court may take judicial notice of a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b).  The Fifth Circuit has held that, when evaluating a Rule 12(b)(6) motion, courts may

6

take judicial notice of matters of public record. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).

### A. The Court should take judicial notice of Plaintiff's presence on Arizona Department of Public Safety sex offender registry.

First, the Court should take judicial notice of the existence of the public file for Plaintiff in Arizona Department of Public Safety sex offender registry, or, equivalently, of the fact that Plaintiff is currently registered as a sex offender in Arizona Department of Public Safety sex offender registry. The Offender Details record for Mr. Decker, as returned by the Arizona Department of Public Safety search tool, is attached as **Exhibit A** hereto and is the subject of Chipton-Ross's first request for judicial notice.

To obtain this record, on May 7, 2026, Chipton-Ross's counsel input the name "Randy Decker" into the "Offender Search" tool, a tool provided by the Arizona Department of Public Safety, at <https://icrimewatch.net/index.php?AgencyID=55662>. (See Welcome Page, <https://www.communitynotification.com/cap_main.php?office=55662> ("The Arizona Department of Public Safety maintains this OffenderWatch® portal as a community service").) The search results returned a link to the Offender Details record for Mr. Decker, the web address and content of which is seen in Exhibit A hereto.

The "Offender Details" page for Mr. Decker is a public record subject to judicial notice. Mr. Decker's presence on this registry can be readily verified from a source whose accuracy cannot be reasonably questioned—that source being the Arizona Department of Public Safety OffenderWatch portal, which can be inspected by any member of the public with an internet connection. Importantly, Chipton-Ross does not request judicial notice of any factual matters contained in or suggested by the record; Chipton-Ross simply asks the Court to judicially notice the fact that the record embodied in Exhibit A hereto exists, and of the corresponding fact that

Plaintiff appeared on the Arizona sex offender registry as of May 7, 2026. *Norris*, 500 F.3d at 461 n.9 ("clearly proper" to take judicial notice of "matters of public record" in deciding 12(b)(6) motion).

**B. The Court should take judicial notice of materials from the Arizona criminal court record for the criminal indictment against Plaintiff.**

Second, Chipton-Ross asks the Court to take judicial notice of **Exhibit B** hereto. Exhibit B is an additional filing from the same Pima County case file that contains the May 15, 2012 dismissal with prejudice that is attached to Plaintiff's First Amended Complaint. Plaintiff has repeatedly argued that that dismissal with prejudice is key to his claims; however, Plaintiff has never provided any filings beyond the bare dismissal with prejudice, nor has Plaintiff provided any more detailed explanation of what the dismissal with prejudice demonstrates. Chipton-Ross seeks judicial notice of one additional filing from the same criminal court file that will provide context and clarity about exactly what the dismissal with prejudice demonstrates.

The additional filing is Plaintiff's own Motion to Dismiss Indictment with Prejudice, filed in Arizona State Court, Pima County, on March 29, 2012 ("Mot. Dismiss"), along with Attachment B thereto. Attachment B to Plaintiff's Motion to Dismiss is the original 1982 order docketing Plaintiff's guilty plea to a violation of A.R.S. § 13-3212, a child prostitution statute. According to the underlying indictment in Pima County, Plaintiff violated A.R.S. § 13-3212 by either (i) knowingly causing a minor to engage in prostitution; (ii) using a minor for the purpose of prostitution, or (iii) permitting the minor to engage in prostitution. (Mot. Dismiss 4). The 1982 order simply states that Plaintiff pled guilty to a violation of A.R.S. § 13-3212; it does not state to which specific subsection(s) of A.R.S. § 13-3212 Plaintiff pled guilty. (Mot. Dismiss, Ex. B thereto.)

8

The gist of the Motion to Dismiss is that only two of these three violations of A.R.S. § 13-3212 require a person to register as a sex offender under Arizona law, but by 2012 no one knew or could determine the exact subsections of A.R.S. § 13-3212 that were the subject of Plaintiff's 1982 guilty plea.  (Mot. Dismiss 5.)  Thus, the argument went, it was possible that Plaintiff pled guilty to a subsection of A.R.S. § 13-3212 that would *not* have required him to register as a sex offender after all.  (Mot. Dismiss 6.)  As the prosecution in 2012 lacked sufficient evidence that Plaintiff was required to register as a sex offender, the court could not convict him for failure to update his address in the sex offender registry, and the case was apparently dismissed on that basis. (*See* FAC Ex. A.)

Viewed in a light most reasonably favorable to Plaintiff, the takeaway from the Arizona criminal case is simply that the particular child prostitution crime that Plaintiff committed may or may not have been one that required him to register as a sex offender.  And that is all.  The Pima County file does not state or suggest that Plaintiff did not, in fact, plead guilty to violation of the child prostitution statutes in 1982—he did.  The Pima County file also does not state or suggest that Plaintiff is not in fact on the Arizona sex offender registry.

It is important to understand the consequences of this limitation.  Plaintiff repeatedly alleges—in fact, it is the central claim in his suit—that Chipton-Ross did not conduct its own sufficient independent inquiry into the FirstAdvantage Report's sex offender registration notation, and that if it had, it would have uncovered exonerating information that would have resulted in Plaintiff being employed by Boeing.  Yet, the Pima County file confirms that there was no great discovery that would have exonerated Plaintiff.  The only additional nuance that the FirstAdvantage Report did not disclose is that the particular child prostitution crime  to which Plaintiff pled guilty might have been one that did not require him to put himself on the sex offender

9

registry.  Plaintiff's entire case rests on the implausible proposition that Chipton-Ross would have hired him had it been aware of this nuance about the specific type of child prostitution crime to which he pled guilty.

## V.    LEGAL STANDARD

A complaint must include facts sufficient to establish the plausibility of the claims asserted, raising the "right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although a complaint need not contain "detailed factual allegations," a complaint that offers no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" should be dismissed under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6).  *Iqbal*, 556 U.S. at 679.  First, the court should "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.*  Second, the court should assume the veracity of any well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement of relief."  *Id.*  The court, drawing on its judicial experience and common sense, must undertake the "context-specific task," *id.*, of determining whether the plaintiff's allegations "nudge[]" his claims "across the line from conceivable to plausible."  *Id.* at 680; *see also Twombly*, 550 U.S. at 570.

## VI.    ARGUMENT

Plaintiff's First Amended Complaint sets forth five counts but does not expressly indicate, via headings or otherwise, which causes of action are brought against which Defendant(s) in particular.  Regardless, and for the following reasons, Plaintiff fails to state a claim against Chipton-Ross under any of his counts or theories.

10

**A. The first two FCRA claims are for violations of statutes governing *providers* of background checks, but Chipton-Ross was the recipient, not the provider, of the FirstAdvantage Report.**

The first and second counts should be dismissed as against Chipton-Ross (to the extent they are asserted against Chipton-Ross at all, as Chipton-Ross is not mentioned by name at all under these counts). The reason is because the statutes providing the basis for these counts do not impose liability on employers like Chipton-Ross who merely receive and do not prepare reports.

Plaintiff's first count is for violation of 15 U.S.C. § 1681e(b), which provides that "[w]henever **a consumer reporting agency** prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added); *see also Williams v. First Advantage LNS Screening Solutions Inc.*, 947 F.3d 735, 745 (11th Cir. 2020).

Plaintiff's second count is for violation of 15 U.S.C. § 1681i, a much longer statute that governs how <u>credit reporting agencies in particular</u> must conduct reinvestigations when a consumer disputes the results of a report. See, e.g., 15 U.S.C. § 1681i(a)(1)(A) ("[I]f the completeness or accuracy of any item of information contained in a consumer's file **at a consumer reporting agency** is disputed by the consumer . . . **the agency** shall . . . conduct a reasonable reinvestigation . . . .") (emphasis added), § 1681i(a)(5)(A) ("If, after . . . reinvestigation . . . , an item is found to be inaccurate or incomplete or cannot be verified, the **consumer reporting agency** shall [¶] promptly delete that item . . .") (emphasis added). Plaintiff alleges that First Advantage (not Chipton-Ross) "failed to conduct a reasonable investigation" and "failed to correct, delete, or properly record the disputed status of inaccurate/misleading items." (FAC ¶ 30.)

As a matter of law, Chipton-Ross cannot be liable under either of Plaintiff's first two counts because **<u>Chipton-Ross is not a consumer reporting agency</u>**. The FCRA defines "consumer

reporting agency" as "any person which, for monetary fees, . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."   15 U.S.C. § 1681a(f).  Chipton-Ross is not the consumer reporting agency but is instead the "third party" to whom a consumer reporting agency would provide information.  (See, e.g., FAC ¶ 33.)

Confirming this conclusion is the fact that Exhibit C to the First Amended Complaint, an excerpt from the consumer report (background check) at issue in this case, does not refer to Chipton-Ross at all; instead, the logo in the corner confirms that the report was made by an entirely different party.

Chipton-Ross is not a consumer reporting agency, plain and simple.  Plaintiff cannot amend around this flaw.  The first two counts are categorically inapplicable to Chipton-Ross and should be dismissed with prejudice and without leave to amend.

### B. All FCRA claims are deficient as a matter of law because Plaintiff cannot show any causation or damages where the matter in question is true.

Independently, all three of Plaintiff's FCRA claims fail as a matter of law because Plaintiff has not alleged, and cannot allege, causation or resulting damages.

All three FCRA claims require a plaintiff to plead and prove causation and resulting damages.  Regarding Plaintiff's first two claims:

> To state a cause of action under 15 U.S.C. § 1681e(b), a plaintiff "must establish that (1) inaccurate information was included in his credit report; (2) the inaccuracy was due to [defendant's] failure to follow reasonable procedures to assure maximum possible accuracy; **(3) [plaintiff] suffered injury; and (4) his injury was caused by the inclusion of the inaccurate entry.**" *Norman v. Experian Info. Sols., Inc.*, 2013 WL 1774625, at *3 (N.D. Tex. Apr. 25, 2013) (Boyle, J.); see *Waggoner v. Trans Union, LLC*, 2003 WL 22220668, at *6 (N.D. Tex. July 17, 2003); 15 U.S.C. § 1681e(b). Furthermore, to assert a claim under 15 U.S.C. § 1681i, a plaintiff "must establish that (1) he disputed the completeness or accuracy of an item of information contained in his consumer file at [defendant] and notified [defendant] directly of that dispute; (2) [defendant] did not

12

reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file in the manner prescribed by Section 1681i(a)(5) within the statutory period; (3) [defendant's] noncompliance was negligent or willful; **(4) [plaintiff] suffered injury; and (5) [plaintiff's] injury was caused by [defendant's] failure to reinvestigate and record the current status of the disputed information or delete the item from the file.**" *Id.*; see *Waggoner*, 2003 WL 22220668, at *9; 15 U.S.C. § 1681i.

*Hammer v. Equifax Info. Servs.,* LLC, No. 3:18-CV-1502-C, 2019 WL 7602463, at *2 (N.D. Tex. Jan. 16, 2019) (emphasis added).

As for Plaintiff's Count III, "The meaning of §1681b(b)(3) is plain: before an employer takes adverse action based in any part on a consumer report, the consumer has a right to receive a description of his rights under the [FCRA], as well as a copy of his report . . . ." *Long v. Southeastern Pa. Transp. Auth.*, 903 F.3d 312, 319 (3d Cir. 2018). However, a "bare procedural violation" of the FCRA, "divorced from any concrete harm," is insufficient to give a person standing to sue §1681b(b)(3). *Id.* at 321. The commonality among these three claims is the unremarkable proposition that, to obtain relief, the harm of which the plaintiff complains must have as its legal and factual cause the FCRA violations themselves.

Here, the harm of which Plaintiff complains is lost wages from the fact that he was not hired, along with consequential damages arising from those lost wages (housing insecurity and nonparty business disruption). To sufficiently state causation against Chipton-Ross for this harm under any of his three FCRA theories, Plaintiff must allege facts showing that, but for wrongful action or inaction by Chipton-Ross, he would have been employed. *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011) ("An act is a but-for cause of cause of an event if the act is a sine qua non of the event—if, in other words, the absence of the act would result in the non-occurrence of the event. Conversely, an act is not a but-for cause of an event if the event would have occurred even in the absence of the act.").

13

Plaintiff has not alleged this causal nexus, nor can he, for two reasons. First, and most obviously, the statement in the FirstAdvantage Report that Plaintiff is on the Arizona sex offender registry is factually true. Thus, had Chipton-Ross further investigated the issue (assuming for the sake of this argument that it did not further investigate the issue), it would have verified that Plaintiff was in fact on the Arizona sex offender registry, and it would have taken the same actions. The outcome for Plaintiff would have been the same, defeating causation. *Fisher*, 649 F.3d at 403.

To the extent Plaintiff argues that the sex offender notation in the FirstAdvantage report, while factually true, was nevertheless misleading, this argument fails as a matter of law. If the report was misleading at all, it was misleading on an immaterial matter that would not have affected the outcome. Plaintiff points to the criminal indictment dismissal as if it contained some exonerating revelation that Chipton-Ross failed to discover. However, as the judicially noticeable materials from the Pima County criminal file make incontrovertibly clear, further investigation would not have revealed anything exonerating. Instead, further investigation would have *confirmed* that Plaintiff committed a child prostitution-related crime; the only additional nuance Chipton-Ross would have discovered is that the criminal file from 1982 was insufficient for the 2012 court to verify that the particular type of sex crime Plaintiff committed required him to register as a sex offender in Arizona. It simply is not plausible to believe that Chipton-Ross would have made a different decision had it understood this nuance. Thus, any alleged failure to investigate or consider allegedly mitigating materials is, as a matter of law, not the legal or factual cause of Plaintiff's non-employment by Chipton-Ross. *Id.* Plaintiff's FCRA claims against Chipton-Ross as subject to dismissal without leave to amend on this basis. *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382, 387 (N.D. Tex. 2022) (dismissal under Rule 12(b)(6) based on

14

lack of sufficient allegations of causation, noting that allegations based on "mere conjecture, guess, or speculation" "fail to meet the Twombly/Iqbal pleading standard").

## C. Count III fails for insufficient notice pleading.

An additional, independent reason Count III fails is that Plaintiff's allegations fail to provide Chipton-Ross with fair notice of exactly what Plaintiff alleges Chipton-Ross failed to do.

"[A] complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." *Shemwell v. Cannon*, 352 F. Supp. 3d 690, 697 (N.D. Tex. 2019); *Anderson v. Dep't. of Hous. & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008) (complaint must contain "facts that would put the defendant on notice as to what conduct supports the claims"). Here, Plaintiff's only allegation of Chipton-Ross's wrongdoing under Count III is the ambiguous and uncertain allegation that "Chipton-Ross failed to timely provide the required disclosures and/or failed to provide a meaningful opportunity to dispute an correct the report before adverse action processes were initiated," (FAC ¶ 35), and that Plaintiff "suffered damages as a direct and proximate result," (FAC ¶ 36). This leaves Chipton-Ross guessing at what Plaintiff alleges it did wrong.

Using "and/or" for a key allegation of wrongful conduct underpinning a cause of action is insufficient and impermissible. As to the material after the "and/or", Plaintiff alleges that Chipton-Ross "failed to provide a meaningful opportunity to dispute and correct the report," and alleges nothing more. This generalized, fact-bereft language is insufficient. As the allegations themselves admit, and as the update notation in the FirstAdvantage Excerpt verifies, Chipton-Ross *did* give Plaintiff an opportunity to dispute the report, and as a result of Plaintiff's dispute the report was in fact corrected on a different issue (Plaintiff's employment history). Plaintiff's allegations under Count III lack sufficient factual specificity and will always lack sufficient factual specificity, because Plaintiff had the required opportunity to dispute the report.

15

**D. The defamation claim fails for multiple independently sufficient reasons.**

Plaintiff's Count IV is for defamation per se, based solely on the statement in the FirstAdvantage Report "that Plaintiff is currently a registered sex offender in Arizona." (FAC ¶ 38.) The elements of a prima facie case for defamation are: (1) the defendant published a false statement; (2) that defamed the plaintiff; (3) with the requisite degree of fault regarding the truth of the statement (negligence if the plaintiff is a private individual); and (4) damages, unless the statement constitutes defamation per se." *Warren v. Federal Nat'l Mortg. Ass'n*, 932 F.3d 378, 383 (5th Cir. 2019) (quoting *Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017)). As Plaintiff's Count IV is definitionally a defamation per se claim, only the first three elements apply here.

**1. The allegations and matters properly before the Court demonstrate that the challenged claims are true, providing an absolute defense to Plaintiff's defamation claim as a matter of law.**

The first and foremost reason why Plaintiff's defamation claim fails as a matter of law is that the allegedly defamatory statement is, as a matter of law, true, providing an absolute defense to the claim.

"In defamation suits brought by private individuals, truth is an affirmative defense." *Warren*, 932 F.3d at 383 (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)). A claim may be dismissed under Rule 12(b)(6) if a successful affirmative defense appears clearly on the face of the pleadings and judicially noticeable materials. *See Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 147 (5th Cir. 2007) (dismissal under Rule 12(b)(6) based on affirmative defense statute of limitations).

Here, the statement that Plaintiff alleges was defamatory is the statement in the FirstAdvantage Report that he is "currently a registered sex offender in Arizona." (FAC ¶ 38.) This is a factually true statement, as the judicially noticeable offender record (Exhibit A hereto) verifies. This registration is, in turn, based on the factually true statement that Plaintiff pled guilty

16

to a count of child prostitution, as verified by the judicially noticeable Pima County criminal file materials (Exhibit B hereto). Thus, there is nothing false or misleading about the statement. It is true based on the record properly before the Court on a Rule 12(b)(6) motion. Chipton-Ross's affirmative defense of truth completely defeats the defamation claim, which must be dismissed without leave to amend.

Plaintiff cannot rely on case law suggesting the defamation claims may survive merely because the allegedly defamatory content, though literally true, is assertedly misleading. This is because here, to the extent the sex offender notation is misleading at all, it is misleading in an immaterial and inconsequential way. As discussed, Plaintiff actually pled guilty to a child prostitution offense in 1982, and the only sense in which the FirstAdvantage Report is even slightly "misleading" is that it fails to mention that the particular child prostitution crime to which Plaintiff pled guilty may not have been one that required him to put himself on the Arizona sex offender registry. As a matter of law, this is an immaterial distinction that does not render the statement misleading.

### 2. Plaintiff fails to allege a publication by Chipton-Ross.

The defamation claim also fails because Plaintiff fails to sufficiently allege a publication by Chipton-Ross. Factually, Plaintiff alleges two things with respect to publication: (1) Chipton-Ross *received* the report from FirstAdvantage, and (2) "Defendants" (undifferentiated) "furnished information to Boeing and/or intermediaries for use in employment and adjudicative decisions." (FAC ¶ 14.) As to (1), obviously, Chipton-Ross cannot be liable for defamation based on merely receiving a report, because in that instance Chipton-Ross was not the one who published the report. This means that Plaintiff's entire defamation claim against Chipton-Ross rests on (2) – a speculative allegation that Chipton-Ross published the report by possibly sharing it with "Boeing

17

and/or intermediaries." This speculative, fact-devoid pleading is exactly the type of pleading that the Supreme Court in *Iqbal* and *Twombly* explained is insufficient to "nudge[]" a complaint "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 680; *Twombly*, 550 U.S. at 570. Plaintiff's allegation of a publication by Chipton-Ross is entirely deficient, subjecting the defamation claim to dismissal.

### 3. The challenged statements are subject to the common interest privilege as a matter of law.

The defamation claim also fails as a matter of law because the challenged statement in the FirstAdvantage Report is justified by the common interest privilege as a matter of law, defeating Plaintiff's claim in its entirety. This privilege, and the defense it provides, arises readily from the straightforward facts of this case, which are that FirstAdvantage, a consumer reporting agency, provided a background check to Chipton-Ross, a staffing agency, who may have shared it with the employer, Boeing.

The common interest privilege protects against defamation liability when a communication "is made in good faith and the author, the recipient, or a third person . . . has an interest that is sufficiently affected by the communication . . . ." *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014). The privilege "comprehends bona fide communications, oral or written, upon any subject in which the author or the public has an interest or with respect to which he has a duty to perform to another owing a corresponding duty." *Gillum v. Republic Health Corp.*, 778 S.W.2d 558, 572 (Tex. App.—Dallas 1989, no writ). The common interest privilege arises out of the occasion upon which the false statement is published. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). Important here, the common interest privilege presents a question of law when the statements at issue employ unambiguous language and where the facts and circumstances of publication are

18

undisputed. *Burbage*, 447 S.W.3d at 254; *Fitzjarrald v. Panhandle Pub. Co.*, 228 S.W.2d 499, 505 (Tex. 1950).

Here, as discussed, the only allegation that Chipton-Ross shared the report with anyone (as opposed to simply receiving the report) is the generalized allegation that "Defendants" "furnished information to Boeing and/or intermediaries for use in employment and adjudicative decisions." (FAC ¶ 14.) Plaintiff further alleges, if only by inference, that as a result of these allegations he was not hired by Boeing. (FAC ¶ 21.) Assuming (for the sake of argument only) that Chipton-Ross shared the report with Boeing, Plaintiff's allegations nevertheless affirmatively plead Plaintiff out of any possible defamation claim against Chipton-Ross owing to the common interest privilege. As Plaintiff alleges, Plaintiff was applying to work at Boeing through Chipton-Ross, a staffing agency. Chipton-Ross, as staffing agency, and Boeing, as potential employer, clearly share a common interest in information about Plaintiff's employability. As a matter of law, information about Plaintiff's background is material to Boeing's interest as Plaintiff's potential employer; Chipton-Ross, a staffing agency, is as a matter of law justified in believing that Boeing, the potential employer, is entitled to know information about Plaintiff; and Boeing is indeed entitled to know the information. *See Steinhaus v. Beachside Env't, LLC*, 590 S.W.3d 672, 677 (Tex. App. —Houston [14th Dist.] 2019, pet. denied). Under these allegations, the common interest privilege applies as a matter of law, fully defeating the defamation claim.[3]

---

[3] The privilege is termed "qualified" because one who "avail[s][oneself] of it must use it in a lawful manner and for a lawful purpose." *Gillum*, 778 S.W.2d at 572. Here, the allegations along with the judicially noticeable facts confirm that, to the extent Chipton-Ross shared the FirstAdvantage Report with Boeing, as a matter of law, Chipton-Ross did so lawfully and with a lawful purpose.

19

**4.    The claim is fundamentally mis-pleaded and cannot be cured.**

Finally, the defamation claim is fundamentally mis-pleaded.  In particular, Plaintiff pleads that "Defendants" published the FirstAdvantage Report, (FAC ¶ 38), and then, *after* the report was published, "Defendants" allegedly acted negligently in some *totally unstated way*, (FAC ¶ 39). This is insufficient and fails to satisfy the elements.  It must be the publication itself that was negligent, and the harm must arise from *that* negligence, not some separate, tangential, unspecified negligent act.

**E.  The tortious interference claim was already dismissed, and the amendment does not cure the claim.**

Plaintiff's fifth and final claim is for tortious interference with prospective business relations.  However, this claim in its original form was already dismissed, and the factual allegations in newly-pleaded claim are nearly identical to those in the original claim, with only cosmetic changes (e.g., "knowingly" was changed to "intentionally").  (Compare Compl. ¶¶ 47-50 with FAC ¶¶ 40-43.)

This is fatal to the tortious interference claim.  The Court already found Plaintiff's allegations to be "conclusory," "bare," and "insufficient to allege" tortious interference.  (R&R 9, Dkt. 27.)  The same exact analysis and conclusion apply here.  Moreover, as Plaintiff had a chance to amend with full knowledge of the deficiencies, it is clear Plaintiff cannot cure the deficiencies, and dismissal should be without leave to amend.

## VII.    CONCLUSION

For these reasons, the Court should GRANT Chipton-Ross's Motion and dismiss all claims against Chipton-Ross with prejudice and without leave to amend.

Dated: June 3, 2026

Respectfully submitted,

*/s/ Michael A. McCabe*
**Michael A. McCabe**
Texas State Bar No. 24007628
mmccabe@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
2000 McKinney Avenue, Suite 1900
Dallas, Texas 75201
Telephone: 972-628-3600
Telecopier: 972-628-3616

**COUNSEL FOR DEFENDANT
CHIPTON-ROSS, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that, on June 3, 2026, a true and correct copy of the foregoing document was served on the *pro se* Plaintiff and all counsel of record via the court's ECF e-filing system.

*/s/ Michael A. McCabe*
Michael A. McCabe

21