**FILED**

May 30, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____Christian Rodriguez_____
DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| RANDY SCOTT DECKER,<br>*Plaintiff,* | § § § | |
| v. | § § | No. 1:26-cv-00070-ADA-SH |
| CHIPTON-ROSS, INC. and<br>FIRST ADVANTAGE CORPORATION,<br>*Defendants.* | § § § § | |

## PLAINTIFF'S SECOND SUPPLEMENTAL NOTICE AND DECLARATION REGARDING IMMINENT FORCED LIQUIDATION, FORCED RELOCATION, AND COMPOUNDING IRREPARABLE HARM IN FURTHER SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Randy Scott Decker, proceeding pro se, files this Second Supplemental Notice and Declaration in further support of his Emergency Motion for Temporary Restraining Order and Preliminary Injunction. This supplement advises the Court that the harm previously described has escalated from financial strain into imminent forced liquidation of household and business assets, forced relocation risk, loss of companion animals, loss of work tools, and continued inability to stabilize housing because employment opportunities remain blocked by disputed background-reporting and registry-related information.

### I. PURPOSE OF THIS SECOND SUPPLEMENT

This filing is submitted to place current and worsening facts before the Court. Plaintiff does not file this supplement to reargue matters already briefed. Plaintiff files it because the situation has

materially worsened and because delayed relief is forcing Plaintiff to dismantle the very household, business, and work capacity needed to survive, seek employment, and continue litigating this case.

Plaintiff has continued to pursue employment, including employment opportunities outside the Boeing/Chipton-Ross onboarding process. Plaintiff alleges that the same or similar disputed Arizona registry-related reporting continues to block or chill employment opportunities, including opportunities involving First Advantage and Checkr reports. Plaintiff has also provided the Court separate privacy-limited exhibits showing skipped safe-water delivery, unsuccessful household-security billing, impending loss of Adobe/Creative Cloud business software, and live employment blockage examples.

## II. CONTROLLING PRINCIPLES FOR IRREPARABLE HARM

A preliminary injunction exists to prevent harm before the Court can decide the merits. The Supreme Court states that a plaintiff seeking preliminary relief must show likelihood of success on the merits, likely irreparable harm without preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

The Fifth Circuit states that the purpose of preliminary relief is practical: "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." Canal Authority of the State of Florida v. Callaway, 489 F.2d 567, 576 (5th Cir. 1974).

Plaintiff recognizes the Supreme Court's caution that "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." Sampson v. Murray, 415 U.S. 61, 90 (1974). But Sampson also recognized that some cases may "so far depart from the normal

situation that irreparable injury might be found." Id. at 92 n.68. Plaintiff submits that this case has departed from ordinary wage loss. The harm now includes forced liquidation of household and business assets, threatened loss of shelter, forced relocation, loss of work tools and business software, inability to maintain safe-water delivery, and loss of long-time companion animals. This is also not a case involving a routine employment delay alone. Plaintiff alleges that disputed consumer-reporting and registry-related information is being treated as conclusive despite court documentation and formal disputes. The FCRA requires consumer reporting agencies to use reasonable procedures to assure "maximum possible accuracy," 15 U.S.C. § 1681e(b), and the Fifth Circuit has recognized that the statute protects consumers from inaccurate or arbitrary information in consumer reports used for employment and other decisions. Pinner v. Schmidt, 805 F.2d 1258, 1262 (5th Cir. 1986).

## III. SECOND SUPPLEMENTAL FACTS

1. Plaintiff is now facing the practical need to sell or attempt to sell household furniture, computers, filmmaking equipment, sound equipment, recording equipment, DeWalt tools, workbench, ladder, and other household and work-related property in order to avoid homelessness and continue basic survival.

2. These items are not luxury assets. They include business, job-search, filmmaking, repair, production, and document-preparation tools that Plaintiff uses or needs for income-producing work, continued job pursuit, and court filing preparation.

3. Plaintiff and the household are being forced toward stripping down to basic clothing, two vehicles, and whatever minimal tools are necessary to keep litigating and seeking employment.

4. Plaintiff's landlord is willing to discuss or attempt a workable arrangement, but Plaintiff states that no arrangement can be maintained without income. Plaintiff alleges that the continuing employment blockage is the reason the housing crisis has reached this stage.

5. Plaintiff has already documented a skipped safe-water delivery and continuing inability to maintain ordinary safe drinking-water service, household security-payment strain, and imminent loss of Adobe/Creative Cloud tools used for business, document handling, and creative/filmmaking work.

6. Plaintiff and a non-party co-partner/co-tenant have already suffered severe credit strain, including frozen or closed credit/loan access, and there is no meaningful remaining credit capacity to bridge the gap while job opportunities continue to fail or stall.

7. Plaintiff is facing the possibility of forced relocation back to Arizona to avoid sleeping on the street or under a bridge. Plaintiff states that this would be a forced survival move, not a voluntary relocation.

8. Forced relocation would likely require Plaintiff and the non-party co-partner/co-tenant to give away long-time companion cats because they cannot be safely accommodated in the emergency relocation arrangement. Plaintiff states that one cat has been with the household approximately fifteen years and another approximately ten years since infancy, and the older cat requires special handling and care.

9. Plaintiff states that the loss of the cats would be a severe family loss, not a replaceable economic item, and that the older cat may not survive the transition or separation because of age and care needs.

10. Plaintiff must also preserve enough funds for toner, printing, mailing, scanning, and basic document preparation to continue prosecuting this case and related disputes. Loss of

printing/document capacity would directly impair Plaintiff's access to the Court and ability to serve filings.

11. Plaintiff has continued to seek work. Plaintiff alleges that multiple job opportunities, including but not limited to Boeing/Chipton-Ross/First Advantage, Kelly Services/Applied Materials/First Advantage, and Twin Liquors/Checkr, have failed, stalled, or been blocked in connection with disputed background-reporting and registry-related information.

12. Plaintiff states that he could have already been working in multiple positions if the disputed background-reporting issue had been handled lawfully and accurately after Plaintiff provided court documentation and dispute materials.

13. Plaintiff alleges that the continued reliance on the disputed registry-related notation has created a cascade of injury that later money damages cannot fully repair because household stability, business equipment, business software, companion animals, housing location, and access to the Court are being lost or threatened now.

14. Plaintiff is not publicly filing lease records, church/community-assistance records, private credit records, or non-party financial documents in this supplement because doing so would expose non-party privacy, lease-related information, and private account details. Plaintiff will provide redacted, sealed, or in camera documentation if the Court orders additional proof.

## IV. WHY THIS IS MORE THAN ORDINARY MONEY DAMAGES

Defendants may argue that all financial harm can be compensated later. Plaintiff respectfully submits that the present situation is different. The harm is no longer just a missed paycheck or a calculable wage period. Plaintiff is facing forced liquidation of the tools and property required to work, maintain a business, pursue employment, prepare court filings, and remain housed.

The Court can later award money if Plaintiff prevails, but a later award cannot fully restore the loss of a home, forced emergency relocation, long-time companion animals, discontinued work tools, lost software/document capacity, or the practical ability to prosecute the case while living without stable housing or safe-water access. This is the precise type of compounding injury that threatens the Court's ability to render meaningful relief later.

Plaintiff therefore respectfully submits that the balance of equities favors narrowly tailored interim relief, expedited discovery, or an evidentiary hearing. Defendants face, at most, obligations to preserve records, participate in expedited discovery, and refrain from treating disputed registry-related information as conclusively employment-disqualifying without meaningful verification. Plaintiff faces forced liquidation, displacement, and loss of basic stability.

## V. REQUESTED RELIEF

Plaintiff respectfully requests that the Court accept and consider this Second Supplemental Notice and Declaration in support of Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. Plaintiff further requests that the Court:

1. grant narrowly tailored interim relief preventing continued treatment of the disputed registry-related notation as conclusively employment-disqualifying without meaningful verification against Plaintiff's court documentation and dispute materials;

2. order preservation of all reports, dispute materials, communications, recipient lists, adverse-action materials, onboarding records, and decisioning records concerning Plaintiff;

3. set an expedited evidentiary hearing or allow expedited discovery limited to the disputed reports, dispute process, recipients/users, adverse-action communications, and the role of the disputed registry-related notation in Plaintiff's lost employment opportunities;

4.  permit Plaintiff to submit any additional private proof under redaction, seal, or in camera review if the Court requires further documentation; and

5.  grant such other and further relief as the Court deems just.

## SUPPLEMENTAL DECLARATION OF RANDY SCOTT DECKER

I, Randy Scott Decker, declare under penalty of perjury under 28 U.S.C. § 1746 that the following is true and correct based on my personal knowledge:

1. Plaintiff is now facing the practical need to sell or attempt to sell household furniture, computers, filmmaking equipment, sound equipment, recording equipment, DeWalt tools, workbench, ladder, and other household and work-related property in order to avoid homelessness and continue basic survival.

2. These items are not luxury assets. They include business, job-search, filmmaking, repair, production, and document-preparation tools that Plaintiff uses or needs for income-producing work, continued job pursuit, and court filing preparation.

3. Plaintiff and the household are being forced toward stripping down to basic clothing, two vehicles, and whatever minimal tools are necessary to keep litigating and seeking employment.

4. Plaintiff's landlord is willing to discuss or attempt a workable arrangement, but Plaintiff states that no arrangement can be maintained without income. Plaintiff alleges that the continuing employment blockage is the reason the housing crisis has reached this stage.

5. Plaintiff has already documented a skipped safe-water delivery and continuing inability to maintain ordinary safe drinking-water service, household security-payment strain, and imminent loss of Adobe/Creative Cloud tools used for business, document handling, and creative/filmmaking work.

6. Plaintiff and a non-party co-partner/co-tenant have already suffered severe credit strain, including frozen or closed credit/loan access, and there is no meaningful remaining credit capacity to bridge the gap while job opportunities continue to fail or stall.

7. Plaintiff is facing the possibility of forced relocation back to Arizona to avoid sleeping on the street or under a bridge. Plaintiff states that this would be a forced survival move, not a voluntary relocation.

8. Forced relocation would likely require Plaintiff and the non-party co-partner/co-tenant to give away long-time companion cats because they cannot be safely accommodated in the emergency relocation arrangement. Plaintiff states that one cat has been with the household approximately fifteen years and another approximately ten years since infancy, and the older cat requires special handling and care.

9. Plaintiff states that the loss of the cats would be a severe family loss, not a replaceable economic item, and that the older cat may not survive the transition or separation because of age and care needs.

10. Plaintiff must also preserve enough funds for toner, printing, mailing, scanning, and basic document preparation to continue prosecuting this case and related disputes. Loss of printing/document capacity would directly impair Plaintiff's access to the Court and ability to serve filings.

11. Plaintiff has continued to seek work. Plaintiff alleges that multiple job opportunities, including but not limited to Boeing/Chipton-Ross/First Advantage, Kelly Services/Applied Materials/First Advantage, and Twin Liquors/Checkr, have failed, stalled, or been blocked in connection with disputed background-reporting and registry-related information.

12. Plaintiff states that he could have already been working in multiple positions if the disputed background-reporting issue had been handled lawfully and accurately after Plaintiff provided court documentation and dispute materials.

13. Plaintiff alleges that the continued reliance on the disputed registry-related notation has created a cascade of injury that later money damages cannot fully repair because household stability, business equipment, business software, companion animals, housing location, and access to the Court are being lost or threatened now.

14. Plaintiff is not publicly filing lease records, church/community-assistance records, private credit records, or non-party financial documents in this supplement because doing so would expose non-party privacy, lease-related information, and private account details. Plaintiff will provide redacted, sealed, or in camera documentation if the Court orders additional proof.

15. I submit this declaration in good faith to advise the Court of the present condition and the worsening, compounding harm being caused while this case remains pending.

16. I am actively trying to obtain employment, preserve housing, protect household stability, preserve my ability to litigate, and avoid forced relocation or homelessness.

17. I respectfully request that the Court consider these facts in evaluating the pending emergency request for temporary restraining order and preliminary injunction, or alternatively expedited discovery and an evidentiary hearing.

Executed on May 30, 2026.

Randy Scott Decker
511 Hoot Owl Ln S
Leander, Texas 78641
512-676-8245 | randysdecker@gmail.com

## CERTIFICATE OF SERVICE

I certify that on May 30, 2026, a true and correct copy of the foregoing was served on all counsel of record in accordance with the Court's filing and service procedures.

*Randy Scott Decker*

Randy Scott Decker