**FILED**

June 02, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _Christian Rodriguez_

DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **RANDY SCOTT DECKER,** *Plaintiff,* | § § § § | |
| v. | § § | **No. 1:26-cv-00070-ADA-SH** |
| **CHIPTON-ROSS, INC. and FIRST ADVANTAGE CORPORATION,** *Defendants.* | § § § § § | |

### PLAINTIFF'S AMENDED SUPPLEMENTAL MOTION FOR CLARIFICATION, EXPEDITED CONSIDERATION, PRESERVATION, AND NARROWLY TAILORED INTERIM RELIEF REGARDING EXTRAORDINARY IRREPARABLE HARM FROM CONTINUING EMPLOYMENT-DISQUALIFYING BACKGROUND REPORTING

Plaintiff Randy Scott Decker respectfully files this Amended Supplemental Motion for Clarification, Expedited Consideration, Preservation, and Narrowly Tailored Interim Relief. Plaintiff asks the Court to treat the harm presented here for what it is: not ordinary lost wages, not hurt feelings, and not a generic reputational complaint, but an alleged ongoing employment-disqualifying mechanism that is excluding Plaintiff from livelihood while the case remains pending.

The practical record alleged by Plaintiff is direct and severe. Plaintiff alleges that certified court records show the relevant Arizona indictment was dismissed with prejudice, that Plaintiff has repeatedly disputed the registry-related reporting, and that the disputed reporting nevertheless continues to operate as a practical employment bar across onboarding opportunities. Plaintiff alleges more than a dozen employment opportunities have been blocked, chilled, withdrawn, or rendered unavailable because the disputed background reporting follows him from employer to employer.

Plaintiff respectfully submits that the Court should not reduce this injury to a damages spreadsheet. A person locked out of work by an employment-disqualifying stigma cannot preserve housing, tools, transportation, communications, software access, business records, litigation capacity, or basic subsistence by waiting for final judgment. The Court's equitable function exists to prevent that precise collapse when later relief would come too late to preserve the Court's ability to render meaningful relief.

Plaintiff invokes the Court's oath-bound judicial duty to decide the issues presented according to law and record. Plaintiff does not ask the Court to adopt anger as law. Plaintiff asks the Court to recognize that the law has long protected the ability to work, earn, preserve property, and obtain meaningful process before a person is effectively branded out of employment. The requested relief is narrow: expedited consideration, preservation, expedited production/discovery, and interim reporting safeguards while the merits are adjudicated.

## I. RELIEF REQUESTED

Plaintiff respectfully requests an order: (1) clarifying that the Court will evaluate Plaintiff's alleged injury as a continuing deprivation of livelihood, occupational liberty, housing stability, and practical survival capacity, not merely as ordinary lost wages; (2) setting expedited hearing or expedited consideration on Plaintiff's pending emergency and preliminary-relief requests; (3) ordering preservation of all report versions, dispute files, source communications, reinvestigation notes, adverse-action communications, audit logs, database pulls, and employer communications concerning Plaintiff; (4) authorizing expedited discovery into the source, verification, reinvestigation, dissemination, and adverse employment effect of the disputed registry-related reporting; and (5) ordering any narrowly tailored interim reporting relief necessary to prevent continued employment-disqualifying harm pending adjudication.

Plaintiff specifically requests that any continued reporting of the disputed registry-related item be restrained unless it simultaneously includes Plaintiff's certified court disposition records, a clear statement that Plaintiff disputes the item, and any legally required current public-record status. If the item cannot be verified as complete, accurate, current, and non-misleading after a reasonable reinvestigation, Plaintiff requests that the Court order deletion, suppression, correction, or other relief consistent with the FCRA and the Court's equitable authority.

## II. THE ISSUE IS NOT ORDINARY ECONOMIC LOSS; IT IS FUNCTIONAL OCCUPATIONAL EXCLUSION

The Court should draw the decisive line at the actual effect of the disputed reporting. This is not a case where a plaintiff lost one paycheck and can wait for a damages calculation. Plaintiff alleges an employment-disqualifying label that follows him from opportunity to opportunity and blocks the ability to earn anything at all. The difference matters. Ordinary wage loss may often be compensable later; functional exclusion from the labor market while litigation proceeds is a compounding injury that destroys the very status quo equity is designed to preserve.

Plaintiff alleges that livelihood has been functionally annihilated for months. The alleged harm is not merely that Defendants owe money. It is that the disputed reporting allegedly prevents Plaintiff from earning the money needed to survive, maintain housing, preserve tools and records, and prosecute this case. In practical effect, Plaintiff alleges that the reporting operates like a private occupational blockade: it keeps Plaintiff from working even in ordinary jobs because the same disputed label is repeatedly placed before prospective employers.

The Court need not decide final liability at this stage to recognize the emergency. It need only recognize that if the disputed reporting continues unchecked, final relief may arrive after the

loss of housing, liquidation of tools, loss of communications, loss of records, and loss of employment windows that cannot be reassembled by a later damages award.

## III. THE RIGHT TO WORK AND EARN A LIVELIHOOD HAS DEEP CONSTITUTIONAL AND COMMON-LAW ROOTS

The Supreme Court has long treated the ability to work in common occupations as a core component of liberty. In Meyer v. Nebraska, the Court described liberty as including the right 'to engage in any of the common occupations of life.' 262 U.S. 390, 399 (1923). That statement does not convert every job dispute into a constitutional case, but it confirms the gravity of a mechanism that effectively places a person outside ordinary employment.

In Truax v. Raich, the Supreme Court stated the principle even more directly:

"The right to work for a living in the common occupations of the community is of the essence of that personal freedom and opportunity which it was the purpose of the Fourteenth Amendment to secure." *Truax v. Raich, 239 U.S. 33, 41 (1915).*

Truax also recognized that equity may act where interference with employment threatens property and livelihood and the legal remedy is inadequate. The Court stated that '[t]he right to earn a livelihood and to continue employment' is entitled to equitable protection when there is no adequate remedy at law. Id. at 38-39, 41.

Greene v. McElroy is especially instructive because it involved a private employee whose ability to work was effectively destroyed by a government-originating disqualification. The Supreme Court recognized that after the disqualification, 'for all practical purposes, that field of endeavor is now closed to him.' 360 U.S. 474, 476 (1959). The Court further stated:

"Although the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the liberty and property concepts of the Fifth Amendment..." *Greene v. McElroy, 360 U.S. 474, 492 (1959).*

Plaintiff cites these authorities for the seriousness of the injury and the equitable character of the relief requested. Plaintiff's present claims against private defendants arise principally under the FCRA and related law. But the constitutional cases matter because they show that American law does not treat a person's ability to earn a living as a trivial interest that courts may allow to be destroyed while paperwork waits.

## IV. THIS IS STIGMA PLUS TANGIBLE DEPRIVATION, NOT REPUTATION ALONE

Defendants may attempt to frame the case as reputation-only injury. That is not Plaintiff's argument. Plaintiff alleges stigma plus concrete, continuing deprivation of employment opportunity, income generation, housing stability, business tools, records, communications, and litigation capacity.

The Supreme Court's due-process cases confirm the distinction. Wisconsin v. Constantineau held that when a person's 'good name, reputation, honor, or integrity' is at stake because of governmental action, 'notice and an opportunity to be heard are essential.' 400 U.S. 433, 437 (1971). Paul v. Davis later held that reputation alone is not enough, but it expressly distinguished cases involving 'some more tangible interests such as employment.' 424 U.S. 693, 701, 710-12 (1976).

Board of Regents v. Roth explains why Plaintiff's allegations belong on the serious side of that line. The Court said it would be a 'different case' if the State imposed a stigma or disability that 'foreclosed his freedom to take advantage of other employment opportunities.' 408 U.S. 564, 573-74 (1972). Plaintiff alleges exactly the practical equivalent: an employment-disqualifying registry-related label that follows him to prospective employers after certified court records and formal disputes were supplied.

The Fifth Circuit has likewise required effective foreclosure, not mere difficulty, for occupational-liberty claims. See, e.g., Adams v. City of Harahan, 95 F.4th 908, 920-21 (5th Cir. 2024) (explaining that a plaintiff must plead facts showing effective foreclosure from the chosen profession). Plaintiff's alleged facts meet the emergency character of that standard at the practical level: repeated blocked onboarding, repeated lost or chilled employment opportunities, and no realistic route to earn while the disputed reporting continues.

## V. PRELIMINARY RELIEF PRESERVES MEANINGFUL JUDICIAL RELIEF

A preliminary injunction or temporary interim order is not limited to preserving a frozen snapshot of an unjust status quo. Its purpose is to prevent irreparable injury and preserve the Court's ability to render meaningful relief. Canal Authority of the State of Florida v. Callaway, 489 F.2d 567, 573, 576 (5th Cir. 1974). The Supreme Court's current formulation requires a showing of likelihood of success, likely irreparable harm, balance of equities, and public interest. Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).

Sampson v. Murray is often cited to argue that employment loss is not irreparable. But Sampson is not a license to ignore extraordinary circumstances. Sampson rejected an injunction on a thin record of ordinary federal probationary discharge, while expressly recognizing that irreparable injury must be assessed from 'the circumstances surrounding' the discharge and the 'resultant effect on the employee.' 415 U.S. 61, 92 n.68 (1974). Plaintiff's record is not a single ordinary discharge. Plaintiff alleges an ongoing reporting mechanism that blocks work itself, thereby collapsing housing, tools, subsistence, and litigation capacity.

The Court should apply Sampson's caution, not stretch it into immunity for employment-disqualifying background reporting. Where the report allegedly operates as a continuing bar to

work and survival while the case is pending, the injury is not adequately captured by future wages alone.

## VI. THE FCRA MAKES ACCURACY, REINVESTIGATION, AND CURRENT PUBLIC-RECORD STATUS CENTRAL DUTIES

The FCRA was enacted because consumer reporting agencies occupy a powerful position over employment, credit, insurance, housing, and reputation. Congress found that consumer reporting agencies have assumed a 'vital role' and must exercise 'grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.' 15 U.S.C. § 1681(a)(3)-(4).

The statutory duty is not minimal accuracy. It is maximum possible accuracy. Section 1681e(b) provides:

> "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *15 U.S.C. § 1681e(b).*

The Fifth Circuit has emphasized that this language means more than literal or partial accuracy. In Pinner v. Schmidt, the Fifth Circuit approved the principle that section 1681e(b) does not require procedures merely to assure that a report is 'accurate,' but to assure 'maximum possible accuracy.' 805 F.2d 1258, 1262-63 (5th Cir. 1986). The court rejected a reporting approach that could say a person was 'involved' in misconduct while omitting the material fact that he was a victim. Id.

Section 1681i likewise requires a reasonable reinvestigation when a consumer disputes completeness or accuracy. The agency must review and consider all relevant information submitted by the consumer, and inaccurate, incomplete, or unverifiable information must be deleted or modified. 15 U.S.C. § 1681i(a)(1), (a)(4), (a)(5).

Section 1681k imposes additional duties for public-record information used for employment purposes. A consumer reporting agency that reports public-record information likely to have an adverse employment effect must either notify the consumer at the time of reporting or maintain strict procedures designed to ensure that such information is complete and up to date. 15 U.S.C. § 1681k(a).

The Supreme Court's FCRA cases confirm that these are real duties. TransUnion LLC v. Ramirez stated that section 1681e(b) creates a duty to use reasonable procedures to assure maximum possible accuracy and that the duty is particularized to the individual who is the subject of the report. 594 U.S. 413, 427-28 (2021). Safeco Insurance Co. of America v. Burr holds that a willful FCRA violation includes reckless disregard of statutory requirements. 551 U.S. 47, 56-60 (2007).

## VII. AFTER CERTIFIED COURT RECORDS WERE SUPPLIED, MECHANICAL DATABASE RELIANCE CEASED TO BE NEUTRAL

The core factual point is simple. Plaintiff alleges that he supplied certified court records showing dismissal with prejudice of the relevant Arizona indictment and repeatedly disputed the registry-related reporting. Once those records were provided, Defendants could not reasonably treat continued mechanical reliance on a registry notation or database feed as neutral verification. A reasonable reinvestigation must grapple with the certified court disposition and the legal effect of the dismissal record.

The CFPB's background-screening advisory opinion reinforces this point. The CFPB stated that background screeners reporting public-record information are not using reasonable procedures to assure maximum possible accuracy if they lack procedures to prevent reporting information that is duplicative, expunged, sealed, or legally restricted, and if they fail to include

existing disposition information when reporting arrests, criminal charges, eviction proceedings, or other court filings. Fair Credit Reporting; Background Screening, 89 Fed. Reg. 4171 (Jan. 23, 2024).

The CFPB also recognized that the consequences of background-screening inaccuracies can be grave, including employment and housing consequences. That is precisely the practical harm alleged here. A report that repeats a registry-related label while omitting, minimizing, or failing to meaningfully process certified court disposition records can be materially misleading even if some isolated data field can be traced to a public database.

Other courts addressing background-check errors confirm that criminal-record reporting mistakes can directly cost employment. In Dalton v. Capital Associated Industries, Inc., a background screener reported a misdemeanor as a felony, leading to withdrawal of a job offer and FCRA litigation. 257 F.3d 409, 412-13 (4th Cir. 2001). In Henderson v. The Source for Public Data, L.P., the Fourth Circuit rejected an attempt to use Section 230 as a broad shield against FCRA claims by an online public-record/background-reporting business. 53 F.4th 110, 120-25 (4th Cir. 2022). These authorities are not binding on this Court, but they show the same principle: automated public-record reporting does not sit above FCRA accuracy duties.

## VIII. TEXAS LAW AND COMMON LAW ALSO REJECT THE IDEA THAT WORK RELATIONSHIPS MAY BE DESTROYED WITH IMPUNITY

Texas law reinforces the seriousness of livelihood and reputation injuries. Texas Constitution article I, section 13 provides that '[a]ll courts shall be open' and that every person injured in lands, goods, person, or reputation 'shall have remedy by due course of law.' Article I, section 19 provides that no citizen shall be deprived of life, liberty, property, privileges, or immunities except by due course of the law of the land. These provisions are not themselves the

FCRA cause of action, but they reflect the same foundational principle: injury to goods, person, reputation, and liberty is not supposed to be left remediless.

The Texas Supreme Court has also recognized that a person's work relationships are legally protectable even when employment is terminable at will. In Sterner v. Marathon Oil Co., the Texas Supreme Court held that 'the terminable-at-will status of a contract is no defense to an action for tortious interference with its performance.' 767 S.W.2d 686, 689 (Tex. 1989). The court explained that until terminated, the contract is valid and subsisting, and third persons are not free to tortiously interfere with it. Id.

For prospective business and employment opportunities, Texas requires proof of independently tortious or unlawful conduct. Wal-Mart Stores, Inc. v. Sturges, 52 S.W.3d 711, 726 (Tex. 2001). Plaintiff alleges independently unlawful conduct under the FCRA and related accuracy duties. The point is not that every lost job creates liability. The point is that neither Texas law nor federal law gives a background-reporting defendant a free pass to destroy employment relationships through inaccurate, incomplete, misleading, or unreinvestigated public-record reporting.

## IX. LATER MONEY DAMAGES ARE NOT AN ADEQUATE SUBSTITUTE FOR STATUS-QUO PRESERVATION

Later money damages may compensate some past wages, but they cannot fully restore the lost ability to accept jobs when offered, preserve housing before eviction risk matures, keep tools and business assets from forced sale or abandonment, maintain communications and software access, or prosecute litigation while cut off from income. Nor can damages fully restore employment windows that vanish when employers move to other candidates.

The Court should view the disputed reporting as a continuing mechanism of harm, not as a completed past event. Each renewed report, each employer communication, each adverse-action process, and each failure to include certified disposition information allegedly repeats and magnifies the injury. Delay therefore is not neutral. Delay allows the alleged reporting mechanism to keep operating until the practical means of survival and litigation are gone.

Plaintiff seeks preservation of the Court's ability to render a meaningful decision on the merits. That is exactly the function described in Canal Authority. If Plaintiff is left unable to work, maintain housing, preserve evidence, communicate, or litigate before the merits are reached, the case may become an empty exercise after the harm has already consumed the status quo.

## X. BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR NARROW RELIEF

The balance of equities favors targeted relief because Defendants have no legitimate interest in disseminating inaccurate, incomplete, misleading, obsolete, unverifiable, or improperly reinvestigated employment-disqualifying information. By contrast, Plaintiff alleges immediate and compounding harm to the ability to work and survive.

The requested relief is not a windfall. Plaintiff does not ask the Court to order an employer to hire him or to decide final damages now. Plaintiff asks for accuracy, preservation, expedited examination, and interim safeguards so that disputed reporting cannot continue operating as an employment bar while Defendants retain the benefit of delay.

The public interest supports accurate employment background screening, FCRA compliance, fair use of public records, inclusion of current dispositions, meaningful reinvestigation, and prevention of occupational exclusion based on inaccurate or misleading

reporting. The public has no interest in allowing a disputed registry-related label to outrun certified court records and formal disputes while a litigant loses the ability to support himself.

## XI. SPECIFIC INTERIM MEASURES REQUESTED

Plaintiff respectfully requests the following interim measures: (1) immediate preservation of all report versions, public-record pulls, audit logs, source communications, dispute notes, reinvestigation notes, employer communications, adverse-action communications, and internal guidance relating to Plaintiff; (2) expedited production of Plaintiff's complete consumer file, all report versions, all reinvestigation procedures and notes, all source information, and all communications with prospective employers concerning the disputed registry-related item; (3) identification of every employer, prospective employer, user, reseller, or third party to whom the disputed item was furnished during the relevant period; (4) an order requiring any continued reporting of the disputed item to include the certified court disposition records and a clear dispute statement; (5) an order prohibiting reporting of the item if Defendants cannot verify it as complete, current, legally reportable, and non-misleading after reasonable reinvestigation; and (6) expedited hearing or briefing on any further temporary injunctive relief necessary to prevent continued employment-disqualifying harm.

Plaintiff also requests that the Court order Defendants to preserve and produce the procedures used to determine whether public-record dispositions are current, whether disputed records have been dismissed with prejudice, whether registry-related data is legally reportable for employment purposes, and whether any report would be materially misleading without the certified disposition records.

## XII. CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(g), Plaintiff states that this motion seeks emergency, preservation, expedited consideration, and related case-management relief. Plaintiff is proceeding pro se and will confer or has attempted to confer with counsel of record to the extent practicable. Plaintiff certifies that agreement has not been reached because the disputed reporting and employment-disqualifying harm remain unresolved. Plaintiff will supplement this certificate if the Court requires additional conference information.

## XIII. CONCLUSION

Plaintiff respectfully asks the Court to call this injury what the record alleges it is: functional exclusion from livelihood through disputed employment-disqualifying reporting after certified court records and formal disputes were supplied. The law does not require the Court to wait until Plaintiff has lost housing, tools, communications, records, and the ability to litigate before recognizing irreparable harm. The Court can preserve its ability to give meaningful relief by ordering preservation, expedited discovery, expedited consideration, and narrowly tailored interim reporting safeguards now.

For these reasons, Plaintiff respectfully requests that the Court grant this motion and enter the attached proposed order or such other order as justice requires.

### PRAYER

Plaintiff respectfully prays that the Court grant this Amended Supplemental Motion for Clarification, Expedited Consideration, Preservation, and Narrowly Tailored Interim Relief; recognize the extraordinary and continuing nature of the alleged irreparable harm; order preservation and expedited production of relevant records; set expedited hearing or

consideration; require interim safeguards against materially incomplete or misleading reporting;

and grant all further relief to which Plaintiff is justly entitled.

Respectfully submitted,

*Randy Scott Decker*

Randy Scott Decker
Plaintiff, Pro Se
511 Hoot Owl Ln S
Leander, Texas 78641
512-676-8245
randysdecker@gmail.com
Date: ___2 June___, 2026

## CERTIFICATE OF SERVICE

I certify that on ___2 June___, 2026, I served a true and correct copy of the

foregoing filing on all counsel of record and/or parties entitled to service through the Court's

electronic filing system and/or by email or other method permitted by the Federal Rules of Civil

Procedure, this Court's Local Rules, and this Court's orders.

*Randy Scott Decker*

Randy Scott Decker

**FILED**

June 02, 2026

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: ___Christian Rodriguez___
DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RANDY SCOTT DECKER,** | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | **No. 1:26-cv-00070-ADA-SH** |
| | § | |
| **CHIPTON-ROSS, INC. and** | § | |
| **FIRST ADVANTAGE CORPORATION,** | § | |
| *Defendants.* | § | |

**CERTIFICATE OF SERVICE**

I certify that on ___2 June___, 2026, I served a true and correct copy of Plaintiff's Amended Supplemental Motion for Clarification and Expedited Consideration Regarding Extraordinary Irreparable Harm, together with the accompanying Proposed Order.

Service was made by electronic mail and/or any other method permitted by the Federal Rules of Civil Procedure, this Court's Local Rules, and any applicable order of this Court, on the following counsel:

**Michael McCabe**
Counsel for Defendant Chipton-Ross, Inc.
Munck Wilson Mandala, LLP
Email: mmccabe@munckwilson.com

**Emma Mata**
Counsel for Defendant First Advantage
Corporation
Email: EMata@seyfarth.com

To the extent any attorney listed above is counsel of record and registered for electronic service in this matter, service will also be accomplished through the Court's CM/ECF system upon filing.

I further certify that a true and correct copy was served on all other counsel of record and/or parties entitled to service.

Date: ___2 Jun___, 2026

*Randy Scott Decker*
Randy Scott Decker
Plaintiff, Pro Se
511 Hoot Owl Ln S
Leander, Texas 78641
512-676-8245
randysdecker@gmail.com